35 C.C.P.A. (Patents)

### Application of DONALDSON.

### Patent Appeal No. 5391.

Court of Customs and Patent Appeals.

Feb. 10, 1948.

Toulmin & Toulmin, of Washington, D. C. (John M. Mason, of Dayton, Ohio, H. A. Toulmin, Jr., of Washington, D. C., and Duward C. Staley, of Dayton, Ohio, of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (H. S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and HATFIELD, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

The only two claims numbered, respectively, 20 and 21, of appellant's application for patent relating to "Treated Paper Liner for Adhesive Roll" were rejected by the Primary Examiner on the ground of lack of invention over prior art cited. The Board of Appeals affirmed the Primary Examiner's decision and the instant appeal to this court followed. ·

The brief for appellant quotes claim 20 as representative. It reads:

"20. As an article of manufacture, adhesive sheet material adapted to be removably secured to a person consisting ·of a base, a coat of adhesive material on said base, and a paper cover on said adhesive surface containing and impregnated with a synthetic resin bonding the **lint** fibers on the surface of the paper **to the**

base thereof and incorporating in the base the physical characteristics of imperviousness and flexibility without brittleness whereby the paper cover can be removed from the adhesive surface without adherence of any particles of one material upon the other."

Claim 21 is substantially the same as claim 20 with the additional feature of incorporating, if desired, a disinfectant in the paper layer to sterilize the paper and maintain the sterility of the adhesive surface.

The following patents are listed as references in the decision of the board:

Beckmann, 1,476,682, December 11, 1923.
Fuller, 1,555,960, October 6, 1925.
Hayden et al., 1,861,530, June 7, 1932.
Eustis, 2,133,609, October 8, 1938.
Dickson, 2,145,755, January 31, 1939.
Warren (British), 493,381, October 7, 1938.

The subject matter, which is simple in character, is illustrated by two drawings, one of which discloses tape wound upon a spool. The base of the tape is a fabric. It is covered on its inner side with a layer of adhesive material upon which there is imposed a layer of paper which is the liner alluded to in the title, supra. The liner contains and is impregnated with a synthetic resin. If desired, a disinfectant, according to claim 21, may be incorporated in the liner, but it is not claimed that this limitation of itself renders claim 21 patentable.

It should be understood that the claim of patentability is limited to the paper layer, in the combination described, which constitutes a liner of the tape structure. All other elements or · features of the claims are conceded to be old in the art, and patentability because of the presence of the paper layer or liner in the combination is predicated solely upon the feature of the layer being impregnated with synthetic resin—at least synthetic resins are the only bonding agents for the paper specified in the appealed claims.

The specification states (omitting the numerals):

" * * * A layer of impregnated paper * * * is applied on the adhesive surface * * * so that on the spool in each layer this paper sheet * * * separates the fabric base * * * of the tape of one layer and the adhesive surface of the tape of the following layer."

The advantages claimed for the alleged invention in the specification are summarized in appellant's brief as follows:

"1. The synthetic resin greatly increases the tear strength of the paper so that it can satisfactorily be used as a covering material for an adhesive surface.

"2. The synthetic resin imparts a high degree of flexibility to the sheet of paper and thereby avoids cracking of the paper which would impair the sterility of the adhesive if surface cracks appear in the paper.

"3. The synthetic resin bonds the lint fibers on the surface of the paper to the body of the paper and thereby prevents lint fibers from adhering to the adhesive material when it is pulled from the paper covering.

"4. The synthetic resin imparts to the paper a quality of allowing for clean removal of the adhesive from the surface of the paper covering without any particles of adhesive adhering to the paper covering or of the paper covering to the adhesive."

In denying the claims the Primary Examiner said, inter alia:

"In view of the disclosure of Warren, it does not appear to be inventive to substitute the liner of Warren in any one of the devices of Beckmann, Hayden et al., Dickson, Fuller or Eustis in place of the types of liners or facing sheets shown. This appears to be an obvious substitution of parts should it be desired to avoid the 'picking' of the paper sheets as is taught in Warren."

The Warren (British) patent, according to a recital in . the specification, "relates to a combination of a sheet of rubber with a surfaced sheet material of cloth, paper or the like, having properties adapting it for use in carrying, separating and protecting tacky rubber."

The surface or face of the sheet of rubber is tacky—that is, it is sticky or adhesive. The patent teaches the application to the tacky rubber surface of a sheet of

material such as cloth, or paper, which has been treated by filling it with "glue, casein, starch or other adhesive material, with or without solid pigments * * *," and pressing or "finishing" it by calendering which gives it a "smooth, glossy surface."

The specification recites:

"A filled and smoothed sheet of cloth or paper, as above described, possesses a smooth and dense surface, but is not ordinarily, in that stage of manufacture, adapted for use as a removable carrier of sheeted or slabbed tacky rubber, because the surface of the same is penetrable by the rubber composition, or by components thereof, and is so strongly adherent thereto that it cannot be separated from the rubber without tearing, splitting or 'picking.'

"It has now been discovered, however, that such filled and smoothed sheet material may be made non-adherent to tacky rubber, to the degree required, by surface coating it with the aforesaid lacquer [referred to in a preceding paragraph] * * *."

It is further said in the specification that the lacquer coating may be produced by applying a solution containing various cellulosic esters or ethers and also "Resins compatible with such cellulose esters and ethers such as Vinyl resins * * * and Acryl resins."

The patent to Beckmann relates to a corn plaster. It discloses a medicated pad which may be provided with an adhesive material on its "wearing" surface "to stick to the corn." In one form shown a "protecting piece or strip of impervious material," which may be paper, is applied to the wearing surface, one or both surfaces of the strip being "waxed or paraffined to exclude dirt and moisture from the pad and medicament."

The patent to Fuller "relates to a sanitary protector intended to take the place of ordinary adhesive tape and bandages" in cases of minor injury. It includes an adhesive tape which consists of a tacky rubber sheet with a paper lining.

The patent to Hayden et al. relates to mounting plasters and other adhesive faced articles. It shows an adhesive faced article mounted upon crinkled or fluted paper. It is taught that when the paper is straightened out by pulling its ends "large plasters * * * will be released and small articles of ring form, such as corn plasters, gaskets and the like actually will be expelled or flipped into space."

The patent to Eustis relates to a surgical dressing consisting of an adhesive tape in sections, having a liner of gauze, crinoline or other sheet material (paper not mentioned) which connects the sections together and also protects the adhesively coated surfaces of the dressings from contact with other surfaces to which they might adhere.

The patent to Dickson which also relates to surgical dressings discloses an adhesive tape having protecting or facing strips of crinoline.

There is no showing in any one of the reference patents, except that of Warren, of any treatment of paper strips used as liners nor of any treatment of gauze or crinoline liners except in the Eustis patent where the crinoline is merely sterilized.

In the Warren patent the treatment which is given the "carrying" sheet (that is, the sheet for use in carrying, separating and protecting the tacky rubber sheet) is, as hereinbefore recited, that of filling it with "glue, casein, starch or other adhesive material"—not impregnating it with a synthetic resin or bonding agent. In that filled condition, the sheet, even after being smoothed, and "given a smooth glossy surface" by calendering, has adhesive qualities and if it be applied to the tacky rubber sheet two adhesive surfaces are brought together with a result wholly different from that which appellant teaches is obtained from placing his treated paper liner in contact with adhesive tape. The result obtained in the Warren patent is described in that part of the specification hereinbefore quoted. The two sheets cannot be separated without "tearing, splitting or 'picking'" the carrying sheet. In order to overcome the effects of bringing together the two adhesive sheets, the Warren patent teaches the further treatment of the carrying sheet with a lacquer coating solution in which there are cellulose esters or cellu-

lose ethers of designated types, or resins compatible with such esters or ethers such as certain vinyl and acryl resins which we understand are synthetic resins.

The Warren patent does not disclose what the tacky rubber treated according to its specification is used for, nor is that otherwise shown, but we should be surprised if it were to develop that it is "adapted to be removably secured to a person," which is a purpose stated in both the appealed claims respecting the article in which appellant's paper liner is used. No question of analogous art was raised in the case, and we suggest none, but it does seem to us that the Warren patent and appellant's claims may reasonably be differentiated in a patentable sense.

Appellant points out that no strip or liner disclosed in the prior art is shown to be impregnated with a synthetic resin, and this seems to be literally true. Warren is the only patent which shows the use of synthetic resin in any relationship, and the use which it shows is as a coating. That there is a difference in meaning between "impregnating" and "coating," of course, admits of no question.

The board said:

" * * * Warren states on page 2 [of the patent] that he finds it necessary to *coat* the filled and smoothed sheet with a *surface* coating because the *surface* of the sheet is penetratable by the rubber composition. From this it would appear that the Examiner is correct in his assumption that Warren's sheet will be at least partially impregnated with the resin. * * *" (Italics ours.)

We are not certain in our own minds that the board correctly, or at least fully, stated the basis of the examiner's "assumption," but evidently it stated what it (the board) believed to be the actual situation relative to the Warren showing, that being the belief upon which it (the board) acted.

Respecting this, it seems proper to point out that the carrying sheet, as we understand it, was penetratable by the tacky rubber *before* the coating was put upon its surface but *thereafter* it was not supposed to be penetratable at least not by the tacky or sticky rubber.

The Beckmann patent teaches the use of wax or paraffin upon a strip thereby rendered impervious to dirt and moisture and the teaching seems to be limited to waxing or paraffining the *surfaces* of the strip. We find nothing in the patent to justify the statement that either the wax or the paraffin is an impregnant.

In the brief of the Solicitor for the Patent Office attention is directed to the fact that the specification recites:

" * * * While the use of paper impregnated with synthetic materials is preferable yet it is not intended to exclude any paper that has a bonding agent therein that produces a smooth surface on the paper to make it substantially lint free or wherein the lint in the paper is securely held therein so that it will not be torn from the paper when unwound from the adhesive."

It is argued that "Such disclosure makes it plain * * * that the alleged invention of appellant is realized as well with merely a surface coating of resin, as with impregnation, either partial, or complete, that is saturation. On such a disclosure it is submitted that any arguments based upon an alleged patentable distinction as between saturation (appellant seems to present the idea that saturation and impregnation are synonymous, an idea which the Solicitor for the Patent Office combats) and mere surface coating must fail to be persuasive of patentability here."

We do not find in the statement of the examiner following the appeal to the board, which is supposed to state with reasonable fullness the examiner's reasons for denying the claims, nor in the decision of the board itself, any reference to the recital quoted by the solicitor from the specification. It admits of the interpretation that appellant did not intend to "exclude" a liner having a bonding agent other than synthetic materials which produced a smooth surface on the liner, although the emphasis placed upon impregnation throughout the specification would seem to justify the conclusion that appellant really intended that the bonding agent, of what-

ever material composed, should impregnate the paper; but whatever may be the correct interpretation, the matter does not seem to us to be of any particular moment here because the claims are limited to "a paper cover * * * impregnated with a synthetic resin." That the claim constitutes the measure of the invention is a principle of patent law so familiar that it requires no citation of authority in its support.

It seems to us that appellant has developed a new and useful appendage for a tape used on the person. If it accomplishes the results claimed for it in the specification, and we have no reason to doubt that it will, it will have done something which, so far as the record shows, has not been done by any tape shown in the prior art cited.

We feel constrained to differ with the conclusion of the tribunals of the Patent Office that no invention was involved, and, therefore, the decision of the board is reversed.

Reversed.

By reason of illness, O'CONNELL, Associate Judge, was not present at the argument of this case and did not participate in the decision.